CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

January 25, 2011

Judith L. Mathis, Esq.
2500 Wilson Blvd. Suite 320
Arlington, VA   22201

Allen F. Loucks, AUSA
36 S. Charles Street
4th Floor
Baltimore, MD   21201

**Re: Jennifer Brown v. Michael J. Astrue, Commissioner of Social Security, PWG-09-1749**

Dear Counsel:

Pending before this Court, by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Jennifer Brown's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits("SSI"). (Paper Nos. 7,13,18).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). A hearing is unnecessary.  Local Rule 105.6.  For the reasons that follow, this Court GRANTS the Commissioner's Motion and DENIES the Plaintiff's Motion.

Jennifer Brown ("Claimant"), applied for DIB and SSI on January 23, 2006, alleging that she was disabled since July 14, 2004, due to hip and knee pain, headaches, an affective disorder, diabetes mellitus, and obesity. (Tr. 15, 50, 61).  Her claim was denied initially and upon reconsideration. (Tr. 50-77).  A hearing was held before the Honorable William F. Clark Administrative Law Judge ("ALJ"), on January 24, 2008, where Ms. Brown appeared and testified.  The ALJ subsequently denied her claims in a decision dated March 26, 2008. (Tr. 13-20).  The ALJ found that although Claimant's osteonecrosis of the left hip, obesity, and diabetes mellitus were "severe" impairments, as

defined in the Regulations, they did not meet or medically equal any of the listed impairments ("the Listings") found in the Regulations. The ALJ also determined that Claimant retained the residual functional capacity ("RFC") to perform a limited range of light work[1]. (Tr. 16). The ALJ found that Claimant was not able to perform any of her past relevant work ("PRW"), and that considering her age, education, work experience, and RFC and after receiving testimony from a vocational expert ("VE") there were jobs that existed in the national economy that she could perform. Accordingly, the ALJ found that she was not disabled. (Tr. 20). On May 6, 2009, the Appeals Council denied Claimant's request for review, making her case ready for judicial review. (Tr. 5-8).

Claimant presents several arguments in support of her contention that the Commissioner's final decision is not supported by substantial evidence.

First she argues that the ALJ failed to properly analyze all of her impairments at step two of the sequential evaluation. Specifically she alleges that ALJ should have determined that her anxiety/PTSD, left knee arthritis, and right foot fracture were additional "severe" impairments. After careful review of the entire record, I disagree.

In order to be "severe", the impairment must significantly limit one's ability to do basic work activities. 20 C.F.R. §416.921(a). An impairment is not severe if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). The claimant bears the burden of production and proof during the first four steps of the inquiry. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

After review of all the evidence, I find the record does not support Ms. Browns' arguments that her alleged right foot fracture, knee arthritis, and PTSD are "severe" impairments as defined in the Regulations. For example, Ms. Brown's treating physician, Dr. Miller, ordered a CT scan in November of 2005 to determine whether there was a fracture of her foot sustained in a July 2004 car accident. The test revealed "no acute fracture"

---

[1] The ALJ found that Ms. Brown's ability to perform the full range of light work was reduced by the inability to climb ropes, ladders, scaffolds, ramps or stairs. The ALJ also found she needed a sit stand option. (Tr. 16).

and the doctor stated only that there was an "old un-united fracture of the base of the second metatarsal" and "mild degenerative spurring at first MTP joint." (Tr. 131). Ms. Brown's treating orthopedic specialist, Dr. Richard Hinton, stated in December 2005 that Ms. Brown had "full range of knee motion", and her knee was "ligamentously stable".(Tr. 122). Dr. Hinton previously examined Ms. Brown on 10/10/05 and stated that her left knee exam was "relatively benign", the knee had had no effusion, no tenderness, and no "instability."(Tr. 123). This objective evidence, which was considered and discussed by the ALJ, seriously undermines Claimant's argument that she had great difficulty "bearing weight and in ambulating" due to knee pain.

Claimant also argues that the ALJ ignored the opinion evidence from her treating therapist, Ms. Jane Parson LCSW in determining whether her anxiety was severe at step two and in determining her RFC at step four. *See* Plaintiff's Mem. pp. 17-26. The record contains evidence that Ms. Brown was diagnosed with anxiety. (Tr. 141, 162). However, after review of the entire record, and the ALJ's decision, I find that the ALJ incorporated the pertinent findings and conclusions based on the required procedure in his decision rationale. His finding that Ms. Brown's anxiety was not severe is supported by substantial evidence. (Tr. 16, 18-19, 167). The Commissioner's regulations require that the ALJ's "rationale must show the significant history, including examination, laboratory findings, and functional limitations that we considered in reaching conclusions about the severity of the mental impairments." *See* 20 CFR §416.920a(c)(4). The ALJ found that Claimant had a "mild" restriction in her activities of daily living, "mild" restrictions in social functioning, "mild" restriction in concentration, persistence, or pace, and experienced "no" episodes of decompensation. (Tr. 16). The ALJ discussed his determination that Claimant's self reported activities did not support "marked" limitations in the areas of functioning. The ALJ also noted that there were inconsistencies between the treatment notes and the mental assessment report submitted by Claimant's therapist, Ms. Jane Parsons.(Tr. 18, 186-191). In sum, the ALJ documented adequately the technique he applied, which is set forth in 20 CFR §416.920a. The ALJ did not ignore the opinions of Claimant's social worker but instead found that the opinions submitted by Ms. Parsons were not consistent with the generally normal findings on her own mental status examinations. (Tr. 186-191).

3

Claimant also argues that the ALJ improperly rejected the opinions of the psychiatric specialist, Dr. Welch-Blair, in determining whether she met Listings 1.02 and 1.06 regarding musculoskeletal impairments at step three of the sequential evaluation and erred in determining her RFC. *See* Plaintiff's Memorandum, pp. 20-28. On April 28, 2006, Dr. Welch-Blair completed a psychiatric report in which she stated, among other things, that due to "chronic hip pain" Claimant was not able to walk up the flight of stairs to her office, so they met in a downstairs conference room. (Tr. 141). Claimant contends that this is evidence that she has an "inability to ambulate effectively". The Commissioner argues that the record does not demonstrate the requirements to satisfy a finding of "inability ambulate effectively" and that the ALJ's decision that Claimant did not meet Listing 1.02 is supported by substantial evidence and should be affirmed. After careful review of the record, I agree with the Commissioner.

The ALJ found that Claimant did not meet Listing 1.02[3] (Tr. 16).

In Subsection C, the Listing requires an "inability to ambulate effectively." This is defined in the Introduction section of Listing 1.00 as

> b. *What We Mean by Inability to Ambulate Effectively*
> (1) *Definition*. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient

---

[3]Listing 1.02 provides:
1.02 *Major dysfunction of a joint(s) (due to any cause):* , characterized by gross anatomical deformity (eg., subluxation, contracture, bony or fibrous ankylosis, instability, and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion or other abnormal motion of the affected joint(s) and finding on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis of the affected joints With:
A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle) resulting in ability to ambulate effectively, as defined in 1.00B2b. 20 C.F.R., Pt. 404, Subpt. P. App. 1.

4

lower extremity functioning (see 1.00J) to permit
independent ambulation without the use of hand-held
assistive device(s) that limits the functioning of
both upper extremities....
   (2) *To ambulate effectively*, individuals must be
capable of sustaining reasonable walking pace over a
sufficient distance to be able to carry out activities
of daily living. They must have the ability to travel
without companion assistance to and from a place of
employment or school. Therefore, examples of
ineffective ambulation include but are not limited to
the inability to walk without use of a walker, two
crutches or two canes, the inability to walk a block
at a reasonable pace on rough or uneven surfaces, the
inability to use standard public transportation, the
inability to carry out routine ambulatory activities,
such as shopping and banking, and the inability to
climb a few steps at a reasonable pace with the use of
a single hand rail. The ability to walk independently
about one's home without the use of assistive devices
does not, in and of itself, constitute effective
ambulation."


There is no evidence in the record of an inability to ambulate
effectively as required by the Regulations cited above.  For
example, there is no evidence that Ms. Brown needs two canes,
two crutches, or a walker.  Therefore Claimant's argument that
she meets Listing 1.02A and 1.06 is without merit.


    Thus, for the reasons given, this Court GRANTS the
Commissioner's Motion for Summary Judgment and DENIES Claimant's
Motion.  A separate Order shall issue.

                              Sincerely,

                                   /s/
                              Paul W. Grimm
                              United States Magistrate Judge